UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIRGINIA L. S.,

                              Plaintiff,
                                                            5:18-CV-0937
v.                                                          (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

SOCIAL SECURITY ADMINISTRATION              LUCY WEILBRENNER, ESQ.
OFFICE OF GENERAL COUNSEL–REGION I          Special Assistant U.S. Attorney
  Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Virginia L. S. ("Plaintiff") against the

Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. § 405(g) and 1383(c)(3),

are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for

judgment on the pleadings.  (Dkt. Nos. 10, 14.)  For the reasons set forth below, Plaintiff's

motion for judgment on the pleadings is denied and Defendant's motion for judgment on the

pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1980, making her 31 years old at her application filing date and 37 years old at the date of the most recent ALJ's decision.  Plaintiff reported earning her GED and the vocational expert found that she has past relevant work as a fast food worker.  Plaintiff alleges disability due to multiple herniated discs, degenerative disc disease with bone spurs, insomnia, sleep apnea, periodic limb movement, prediabetes/diabetes, asthma, severe allergies, gastroesophageal reflux disorder, kidney stones, kidney cysts, ovarian cysts, post-traumatic stress disorder ("PTSD"), anxiety, depression, obsessive compulsive disorder, moderate conductive hearing loss, and retracted ear drums.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on February 1, 2012, alleging disability beginning February 24, 2010.  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at an initial hearing on March 11, 2014 (which was postponed to allow her to obtain representation), and she appeared at a hearing before ALJ Marie Greener with her representative on July 7, 2014. (T. 34-88.)[1]  On August 20, 2014, ALJ Greener issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 14-24.)  On February 1, 2016, the Appeals Council denied review.  (T. 1-3.)  Plaintiff appealed to the United

---

[1]        The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

States District Court for the Northern District of New York and, on June 22, 2017, Magistrate

Judge William B. Mitchell Carter remanded this case for further proceedings before an ALJ. (T.

1292-1313.) On September 27, 2017, the Appeals Council remanded for further proceedings

consistent with Magistrate Judge Carter's Decision and Order.[2] (T. 1235-38.) Plaintiff's claim

was reassigned to ALJ Elizabeth W. Koennecke, who conducted a hearing on April 3, 2018. (T.

1203.) On June 7, 2018, ALJ Koennecke issued a written decision finding Plaintiff was not

disabled under the Social Security Act. (T. 1203-20.) Plaintiff chose to bypass the written

exceptions procedure and filed an appeal directly with this Court. (Dkt. No. 10, at 5 [Pl.'s Mem.

of Law].) As a result, the ALJ's June 2018 decision is the final decision of the Commissioner.

### C.      The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and

conclusions of law. (T. 1203-19.) First, the ALJ found that Plaintiff was insured for benefits

under Title II until September 30, 2012. (T. 1203.) Second, the ALJ found that Plaintiff has not

engaged in substantial gainful activity since her application filing date. (T. 1206.) Third, the

ALJ found that Plaintiff's obesity, spine disorder, myofascial pain syndrome, and mental

impairment variously characterized are severe impairments, while her various other alleged

impairments are either not severe impairments or not medically determinable impairments. (*Id*.

at 1206-07.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically

equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings");

specifically, the ALJ considered Listings 1.04, 12.04, 12.06, and 12.15. (T. 1207-09.) Fifth, the

---

[2]      Plaintiff filed a subsequent Title XVI application while her appeal was pending, which was initially denied on September 19, 2017. (T. 1203.) This application was consolidated with the application underlying the current action.

ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except she can occasionally balance, climb, stoop, crouch, crawl,
> kneel, and reach overhead; can frequently reach in all other
> directions; and has no limit handling or fingering. The claimant can
> work in a low contact environment - does not require more than
> simple short interactions with supervisors, co-workers, or the public.
> She may work in proximity to others, but the tasks do not require
> working in conjunction with others and predominantly involve
> working with objects rather than people and consist of routine daily
> tasks which do not significantly change in pace or location on a daily
> basis and which do not ordinarily require confrontation with others
> such as arguing with customers, restraining or detaining individuals.

(T. 1209.) Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work. (T.

1218.) Seventh, the ALJ found that Plaintiff remains able to perform a significant number of

sedentary jobs in the national economy, specifically as a document preparer, final assembler, and

addresser. (T. 1219.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 10, at

14-21 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ failed to comply with the

Appeals Council's remand order by failing to address or remedy all of the errors identified by

Magistrate Judge Carter related to the previous ALJ's decision and by failing to properly assess

Plaintiff's credibility. (*Id.* at 14-17.) More specifically, Plaintiff argues that the ALJ (a) repeated

errors related to assessing Plaintiff's credibility (including failing to provide a detailed

assessment of her subjective complaints) and relying on mischaracterized reports of Plaintiff's

activities of daily living, and (b) erroneously dismissed the third-party statement provided by

Plaintiff's fiancee without providing good reasons for doing so.  (*Id.*)

Second, Plaintiff argues that the ALJ failed to properly weigh the opinions of her treating physicians and other sources because (a) the ALJ ignored positive clinical findings from examinations such as trigger points, (b) the ALJ failed to properly evaluate Plaintiff's reported activities and abilities, and (c) the ALJ mischaracterized the record when concluding that the opinions of these sources were not supported by their own treatment notes and consistent with the record as a whole.  (*Id.* at 19-21.)

## 2.      Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts two arguments.  (Dkt. No. 14, at 7-15 [Def.'s Mem. of Law].)  First, Defendant argues that the ALJ complied with the remand order and sufficiently assessed Plaintiff's subjective complaints.  (*Id.* at 7-11.)  More specifically, Defendant argues that (a) the ALJ extensively considered Plaintiff's activities and acknowledged where Plaintiff reported limitations, (b) the ALJ explicitly considered Plaintiff's reported activities as a whole when determining that her demonstrated level of functional ability was higher than she now alleges, (c) the ALJ justifiably relied on the relatively mild medical findings that suggest Plaintiff's reports of greater functional limitations were not wholly credible, and (d) the ALJ was under no obligation to rely on the statement submitted by Plaintiff's fiancee or otherwise provide an explanation for rejecting that statement.  (*Id.*)

Second, Defendant argues that the ALJ's weighing of the opinion evidence is supported by substantial evidence.  (*Id.* at 11-15.)  More specifically, Defendant argues that (a) the ALJ remedied the errors identified by the Magistrate Judge by pointing to specific medical evidence that contradicts the limitations opined by the relevant sources, (b) the few notations of abnormal

objective findings do not render the ALJ's findings unsupported by substantial evidence given the multitude of records that did not show any objective abnormalities, (c) the ALJ was entitled to discount the relevant opinions based on the mostly normal objective findings and Plaintiff's reports of her daily activities and abilities, and (d) the ALJ properly resolved a conflict between the 2017 and 2018 opinions from PA Barkley, and this Court is not permitted to reweigh that evidence as Plaintiff now requests.  (*Id.*)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering

vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.     ANALYSIS

### 1.     Whether the ALJ Complied With the Appeals Council's Remand Order

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Generally, "ALJs have acknowledged throughout the years that the remand instructions they received from the federal district court are the law of the case," and, more specifically, "the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits" on remand. *Dommes v. Colvin*, 225 F. Supp. 3d 113, 118 (N.D.N.Y. 2016) (Suddaby, C.J.). Additionally, pursuant to the regulations, the ALJ is bound to "take any action that is ordered by the Appeals Council." *Dommes*, 225 F. Supp. 3d at 118 (quoting 20 C.F.R. §§ 404.977[b], 416.1477[b]). The Appeals Council in this case remanded Plaintiff's appeal back to the ALJ following the District Court's Decision and Order, explicitly indicating

that the case was to be remanded "for further proceedings consistent with the order of the [district] court." (T. 1237.) Thus, the ALJ was required to comply with the guidance provided by the District Court when making her determination, and any failure to do so would be error.

However, the Court finds that, contrary to Plaintiff's argument, the ALJ complied with the District Court's Decision and Order. In that Decision and Order, Magistrate Judge Carter identified the following errors in the decision by ALJ Greener: (1) the ALJ failed to provide good reasons for affording very little weight to the opinion from PA Richman and Dr. Tallarico and the opinion from Dr. Martin because (i) she merely stated that these opinions were inconsistent with their own treatment notes and the medical record as a whole and cited the entirety of the medical record rather than specific evidence supporting her conclusions, (ii) she erred in emphasizing a lack of certain findings in the medical record specifically related to functional activities (i.e., the fact that the treatment notes did not specifically state there were limitations in standing, walking, sitting, etc.) without explaining why those treatment notes were inconsistent with the opinions, and (iii) she relied on the lack of imaging of the lumbar spine despite the fact that Plaintiff had not alleged an impairment of the lumbar spine; (2) the ALJ appeared to rely on selective portions of Plaintiff's testimony when formulating the RFC finding without considering testimony that suggested greater limitations and failed to explain how reported activities of daily living as a whole equated to an ability to perform light work; and (3) although the ALJ's weighing of the mental opinion evidence was supported by good reasons, her mental RFC was not supported by substantial evidence because (i) the ALJ did not explain the basis for her finding that Plaintiff remained capable of unskilled work based on her non-specific citation to the entire medical record without any meaningful analysis, and (ii) the ALJ relied on the faulty

assessment of Plaintiff's subjective reports as already discussed.  (T. 1300-12.)

Putting aside the issue of whether the ALJ's weighing of the opinion evidence was permissible for the moment (a determination not wholly reached by Magistrate Judge Carter), the Court finds that ALJ Koennecke remedied the errors committed by the previous ALJ. Specifically, ALJ Koennecke discussed and cited specific evidence from the medical record to support both her weighing of the opinion evidence and her RFC finding as a whole.  (T. 1207-18.)  The Court therefore finds that Magistrate Judge Carter's previous concerns over an inability to assess whether the ALJ's decision was supported by substantial evidence due to the broad citation to whole exhibits are therefore not implicated by ALJ Koennecke's decision.  Even though ALJ Koennecke did not cite every piece of evidence that supported or refuted her findings, or (in some cases) merely cited page numbers without specifically discussing the findings contained therein, the fact that the ALJ did not discuss every piece of evidence in detail does not render her decision unsupported.  *See Perez v. Astrue*, 907 F. Supp. 2d 266, 273 (N.D.N.Y. 2012) (Young, J.) (noting that failure to cite specific evidence does not indicate that it was not considered, especially where "the record allows that reviewing court to ascertain why the hearing officer did not give weight to a particular piece of evidence"); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) (noting that "an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered"); *accord, Fiorenza v. Comm'r of Soc. Sec.*, 16-CV-1255, 2017 WL 4443815, at *5 (N.D.N.Y. Oct. 4, 2017) (Suddaby, C.J.) (collecting cases). Additionally, ALJ Koennecke did not rely on a lack of imaging of the lumbar spine as ALJ Greener did, and she indicated that the relevant opinions were inconsistent with the limited

positive (i.e., primarily negative) findings in the treatment notes, an action that Magistrate Carter specifically found would be permissible (as opposed to finding that the opinions were inconsistent with the lack of notations of functional abilities in the treatment record, which Magistrate Judge Carter found to be impermissible). (T. 1302-03.)

As to the "credibility" determination,[3] the Court finds that the ALJ appropriately complied with Magistrate Judge Carter's order to reassess Plaintiff's subjective complaints. In particular, ALJ Koennecke specifically discussed a wide range of reports of functioning made by Plaintiff herself in submissions to the Social Security Administration, at her hearing, and to physicians throughout the relevant time period, including acknowledging when Plaintiff reported limitations in her ability to perform certain tasks. (T. 1208, 1210-1218.) Although ALJ Koennecke did not discuss every statement made by Plaintiff, she did not rely only on selective portions of those statements as Magistrate Judge Carter found the previous ALJ had. (T. 1304-05.) The ALJ specifically found that Plaintiff's statements indicating limitations greater than those included in the RFC were "not entirely supported by the objective medical evidence and were somewhat inconsistent with her activities and negative clinical findings," activities and

---

[3]        The Court notes that, as of March 28, 2016, the Social Security Administration's standard for assessing a claimant's subjective complaints changed such that the term "credibility" has been eliminated from the regulations to mitigate concerns that the assessment of subjective symptoms would be used as an assessment of the claimant's personal character. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The "credibility" standard was in effect at the time of ALJ Greener's decision and thus was relevant to Magistrate Judge Carter's assessment of that decision. However, because the current ALJ decision was rendered in June 2018 (well after the effective date of SSR 16-3p), this Court considers the specific standards outlined in SSR 16-3p. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017) (stating that a federal court should apply the rule that was in effect at the time the decision under review was issued, including where the case was remanded by a federal court after March 28, 2016, and further proceedings were conducted that are now being appealed).

findings that were discussed in detail throughout the ALJ's decision. (T. 1218.) As a result, it is clear that the ALJ relied on a combination of her assessment of the medical evidence and her assessment of a wide range of Plaintiff's reported abilities and activities, not merely on a selective portion of Plaintiff's daily activities. As a result, the Court cannot say that ALJ Koennecke failed to act in accordance with Magistrate Judge Carter's findings when she reassessed Plaintiff's subjective complaints as part of her determination.

For all of the above reasons, the Court finds that the ALJ complied with both Magistrate Judge Carter's Decision and Order and the Appeals Council's remand order, and Plaintiff therefore is not entitled to remand on this basis.

### 2. Whether the ALJ's Assessment of Plaintiff's Subjective Complaints Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

When assessing a claimant's functioning, the ALJ must assess the claimant's subjective complaints along with the medical and other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In particular, the ALJ must assess whether the claimant's statements about the intensity, persistence and limiting effects of her symptoms are consistent with the objective medical evidence, although the ALJ cannot disregard the claimant's statement based solely on the fact that the objective medical evidence does not substantiate the alleged degree of limitation. *Id.* Rather, the ALJ should also consider the statements of medical sources, non-medical sources, and the enumerated relevant factors (i.e., daily activities, the nature of the symptoms, factors that

precipitate or aggravate the symptoms, medications, the treatment received, and any other measures used to alleviate the symptoms).  *Id.*; 20 C.F.R. §§ 404.1529, 416.929.  However, there is no error where the ALJ fails to discuss all the relevant factors so long as she has provided specific reasons for her determination and the evidence of record "permits [the Court] to glean the rationale of the ALJ's decision."  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013).

In addition to arguing that the ALJ failed to comply with the remand order as to her assessment of Plaintiff's subjective complaints, Plaintiff also argues more broadly that the ALJ's assessment of her subjective complaints is not supported by substantial evidence.  (Dkt. No. 10, at 14-17 [Pl.'s Mem. of Law].)  However, Plaintiff's arguments that the ALJ did not evaluate her subjective claims beyond stating they were inconsistent with the medical evidence (and that her symptoms were in fact consistent with the medical evidence) are unpersuasive.  The ALJ discussed in detail the activities of daily living Plaintiff reported to physicians throughout the relevant time period, the conservative nature of her treatment, and the lack of objective findings to support the alleged level of limitation  (T. 1209-13.)  Nor is the Court convinced that the ALJ misrepresented Plaintiff's reports; in particular, Plaintiff highlights her testimony about limitations in shopping at the most recent hearing, which the ALJ noted by stating that Plaintiff "reported shopping with help" (an accurate, if simplified, summation of her testimony).  (T. 1213.)  The fact that Plaintiff may have reported greater functional limitations at the hearing two months before the ALJ's decision does not obviate the need for the ALJ to consider Plaintiff's functioning over the entire relevant period, or the fact that Plaintiff's more recent reports of near-total inability to perform household chores and other activities are still inconsistent with the most recent treatment notes showing no objective abnormalities and continued conservative treatment

for her spine impairment.  (T. 2121.)  Additionally, as discussed above, any failure by the ALJ to explicitly discuss certain of Plaintiff's reports in no way shows that she failed to consider those reports.  *Perez*, 907 F. Supp. 2d at 273; *Barringer*, 358 F. Supp. 2d at 79; *Fiorenza*, 16-CV-1255, 2017 WL 4443815, at *5.  Based on the evidence as a whole, the Court cannot say that the ALJ's assessment of Plaintiff's subjective complaints fails to satisfy the regulatory requirements or is not supported by substantial evidence.

Nor does the ALJ's rejection of the statement from Plaintiff's fiancee for the potential of bias constitute error.  Although the ALJ is required to consider such statements, they are not subject to requirement to provide "good reasons" that is applicable to statements from medical sources, as Plaintiff seems to argue.  (Dkt. No. 10, at 15-16 [Pl.'s Mem. of Law].)  In addition to noting the potential for bias based on the third-party's relationship with Plaintiff, it is also clear from the rest of the ALJ's decision that she found the level of limitation similar to those reported in this third-party statement to be inconsistent with the medical and other evidence, providing sufficient (albeit implicit) reason for the ALJ's decision not to rely on this third-party statement. *See John D. v. Comm'r of Soc. Sec.*, 18-CV-0751, 2019 WL 6877974, at *6, 9-10 (N.D.N.Y. Dec. 17, 2019) (Dancks, M.J.) (upholding the ALJ's findings, including his decision to afford little weight to third-party statements from the plaintiff's friends and spouse because they were all sympathetic to plaintiff and were not medical sources); *Russell v. Colvin*, 13-CV-1030, 2015 WL 570828, at *17 (N.D.N.Y. Feb. 11, 2015) (Hummel, M.J., D'Agostino, J.) (finding no error in the ALJ's provision of no weight to third-party statements due to the sources' interest in the case because the ALJ had explicitly considered that evidence as part of the overall record).

For all of the above reasons, the Court finds no error in the ALJ's assessment of

Plaintiff's subjective complaints.

### 3. Whether the ALJ's Assessment of the Opinion Evidence Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff argues that the ALJ failed to provide good reasons consistent with the treating physician rule for discounting the opinions of the treating sources, in particular the opinion from PA Richman and Dr. Tallarico, and the opinions of PA Barkely, but he generically asserts that "the ALJ did not properly weigh any of the opinions of Plaintiff's treating physicians." (Dkt. No. 10, at 19-21 [Pl.'s Mem. of Law].)

In assessing opinion evidence from a treating physician, the ALJ must first determine whether that opinion is entitled to controlling weight; an opinion is entitled to controlling weight "so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 [2d Cir. 2008]). In situations where the treating physician's opinion is not entitled to controlling weight, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to

explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]), report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

In terms of the ALJ's reliance on the opinions of physical functioning, the ALJ afforded limited weight to the June 2014 opinion of treating sources Robert Richman, PA, and Eric Tallarico, M.D., limited weight to the July 2014 opinion of treating physician Laura Martin, D.O., limited weight to the October 2014 opinion of treating physician N. Ghaly, M.D., some weight to the February 2015 opinion from Jennifer Godlewski, RPA, some weight to the January 2016 opinion from Carla Vavala, RPA, some weight to the February 2016 opinion of consultative examiner Kalyani Ganesh, M.D., some weight to a 2017 opinion of Jacqueline Barkley, PA, and limited weight to the January 2018 opinion from PA Barkley. (T. 1210-12.) In terms of the ALJ's reliance on the opinions of mental functioning, the ALJ afforded limited weight to statements by Grace Puchalski, LCSW, that Plaintiff had unspecified limitations in times of stress, some weight to the March 2012 opinion of consultative examiner Jeanne Shapiro, Ph.D., some weight to the April 2012 opinion of state agency non-examining physician E. Kamin, some weight to the May 2012 opinion of Ms. Puchalski, some weight to the October 2014 opinion by Dr. Ghaly, limited weight to the May 2015, November 2015, February 2016,

and February 2017 opinions of therapist Tyler Sliker, LMFT, some weight to the September 2016 opinion from Dr. Shapiro, limited weight to a September 2016 opinion of a state agency non-examining psychologist, some weight to the 2017 opinion from PA Barkley, and some weight to the September 2017 opinion from Sarah Vergara, MHC (although her opined moderate limitation for following, understanding and remembering simple instructions was afforded little weight). (T. 1213-18.)

The Court notes that the ALJ's primary reason for declining to adopt limitations in the majority of the opinions was that those opined limitations were "inconsistent with the claimant's activities and negative clinical findings," with variations such as inconsistency with "documented limited positive clinical findings" and that they were "not entirely supported by the objective medical evidence." (T. 1210-17.) Inconsistency with the medical evidence as a whole has been routinely found to be a good reason for declining to rely on a treating physician's (or any other source's) opinion. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) (Mordue, J.) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 [N.D.N.Y. 2007][Bianchini, M.J.]); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 [2d Cir. 2004]).

As a general matter, Plaintiff argues that the ALJ erred in rejecting any opinion based on her finding that they were inconsistent with Plaintiff's activities and the negative clinical findings because (a) the ALJ ignored positive objective findings such as trigger points, and (b) the ALJ

-17-

misrepresented Plaintiff's activities of daily living. (*Id.*) The Court has already determined that the ALJ's assessment of Plaintiff's subjective reports (including her activities of daily living) is supported by substantial evidence; thus, the Court will consider only whether the ALJ's finding that the relevant opinions were inconsistent with the objective medical evidence is supported by substantial evidence.

Plaintiff cites a small selection of treatment notes in which she was observed to have myofascial trigger points and limited range of motion with pain in her neck and upper back, but ignores the fact that notes from the CNY Spine and Wellness Center show that she consistently reported 70-to-80-percent reduction in her pain for six weeks to three (or more) months from trigger point injections administered between September 2012 and May 2015. (*See e.g.,* T. 852, 879, 1574, 1581, 1587, 1589, 1616, 1619, 1623, 1625, 1627, 1629, 1631, 1633, 1672.) In particular, it was noted in a treatment note from April 29, 2015, that, although she presented with trigger points, limited spinal range of motion, and increased pain with motion, she reported that the trigger point injections provided 75-percent pain relief for six weeks, which allowed her to increase her activities for longer periods with less pain. (T. 1576.) Although trigger point injections were noted as being stopped in April 2016, all the examinations from that time until 2018 document no abnormal objective findings; notably, Plaintiff underwent an EMG for complaints of numbness and weakness in her legs but the test showed no abnormality. (T. 2055-58, 2080-83, 2098, 2105, 2112, 2121.) In particular, a more detailed examination on November 3, 2017, by PA Barkley revealed normal neck range of motion, normal general musculoskeletal range of motion, normal strength without atrophy or tremor, no sensory deficit, normal muscle tone, normal coordination and gait, and normal reflexes. (T. 2112.) Similarly, as to the opinions

related to Plaintiff's mental functioning, although the record contains evidence that Plaintiff experienced depression and anxiety symptoms, particularly in response to situational life stressors, examinations primarily did not show any observable manifestions of those symptoms and do not suggest that the ALJ's RFC is unsupported by substantial evidence. (*See e.g.*, T. 1014-43, 1724-1803, 1807-11, 2005-32, 2044-50.) Based on all the medical evidence, including the above, the Court finds that the ALJ's statements that the relevant opinions were inconsistent with the medical evidence is supported by substantial evidence and constitutes a good reason for rejecting even the treating physicians' opinions. The ALJ therefore did not err in rejecting the various physical and mental opinions purporting to show greater work-related limitations than those included in the RFC, including the opinions from Dr. Martin and Dr. Tallarico/PA Richman.

Plaintiff also argues that the ALJ "mischaracterized the record" by finding that the 2018 opinion from PA Barkley was inconsistent with her 2017 opinion rather than interpreting it as a clarification or refinement of that earlier opinion. (Dkt. No. 10, at 21 [Pl.'s Mem. of Law].) However, the Court cannot say that the ALJ's interpretation of the evidence was erroneous or unsupported. In particular, the Court notes that PA Barkely's indication that in the 2018 opinion that Plaintiff could sit only 20 minutes at one time and for four hours total in a workday is inconsistent with her previous opinion (and other opinions in the record that the ALJ credited) that Plaintiff had no limitations in her ability to sit; such inconsistency cannot reasonably be interpreted as merely a clarification or elaboration of the prior opinion. (*Compare* T. 2181-82 *with* T. 2178-79.) Additionally, the ALJ did not reject portions of the 2018 opinion merely because they were inconsistent with the 2017 opinion, but also because they were not entirely

supported by the objective medical evidence and Plaintiff's treatment notes, and were somewhat

inconsistent with Plaintiff's reported daily activities.  (T. 1212-13.)  As already discussed above,

the ALJ's finding that the types of disabling limitations rejected in the 2018 opinion were

unsupported by the evidence constitutes a good reason for rejecting even a treating physician

opinion, much less an opinion from a physician's assistant.

Additionally, although the ALJ did not afford more than "some weight" to any of the

opinions, it is clear that she relied in particular on opinions from PA Godlewski,[4] PA Vavala,[5]

Dr. Ganesh,[6] PA Barkely (the 2017 opinion),[7] Dr. Kamin,[8] and Dr. Shapiro (the 2016 opinion)[9]

when formulating the RFC.  (T. 1211-18.)  Because these opinions generally support the finding

---

[4]    In April 2015, PA Godlewski opined that Plaintiff has moderate limitations in
lifting, carrying, pushing, pulling, bending, using stairs and climbing, mild limitations in walking
and standing, and no limitations in sitting, seeing, hearing or speaking.  (T. 1559-60.)

[5]    In January 2016, PA Vavala opined that Plaintiff has moderate limitations in
lifting, carrying, pushing, pulling, bending, using stairs, climbing, and reaching, mild limitations
in walking and standing, and no limitations in sitting, seeing, hearing or speaking.  (T. 1693-94.)

[6]    In September 2016, Dr. Ganesh opined that Plaintiff had no gross limitations in
sitting, standing, or walking and a mild limitation in lifting, reaching, pushing, and pulling.  (T.
1813-16.)

[7]    In early 2017, PA Barkley opined that Plaintiff had moderate limitations in
walking, standing, lifting, carrying, using stairs, and climbing, and no limitations in sitting,
seeing, hearing, or speaking.  (T. 2178-79.)

[8]    In April 2012, Dr. Kamin opined that Plaintiff could perform entry-level work in a
low-contact setting.  (T. 747-49.)

[9]    In September 2016, Dr. Shapiro opined that Plaintiff had no limitations in
understanding and following simple instructions and directions, performing simple or complex
tasks, attending to a routine and maintaining a schedule, or learning new tasks, mild-to-moderate
limitations in maintaining attention and concentration depending her anxiety level, making
appropriate decisions and consistently relating to and interacting well with others, and moderate
limitations dealing with stress.  (T. 1807-11.)

that Plaintiff is not disabled and is capable of performing work at the level found in the RFC, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

For all of the above reasons, the Court finds that the ALJ did not commit error when weighing the opinion evidence and that her RFC determination is supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Commissioner's Decision is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: February 3, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge